IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 8, 2023

**IN RE CONSERVATORSHIP OF SUSAN DAVIS MALONE**

**Appeal from the Probate Court for Shelby County**
**No. PR-24906          Joe Townsend, Judge**

_____

**No. W2023-00841-COA-T10B-CV**

_____

KENNY ARMSTRONG, J., dissenting.

I respectfully dissent from the majority's holding that recusal of the trial judge is not warranted in this case. The majority discusses each of Appellants' allegations concerning the trial court's bias. However, the majority fails to consider the cumulative effects of the trial court's actions, and wholly fails to consider the fact that the ultimate result of these actions is usurpation of the autonomous decisions Ms. Malone made for her own care when she was competent to do so. Although the trial court negated Ms. Malone's well-established attorney-client relationship with Mr. Autry, Ms. Bleavins [together with Mr. Autry, "Áttorneys"], and the Williams McDaniel firm, my dissent does not focus on Judge Townsend's rulings. Rather, in the context of recusal, I focus my dissent on the disparate treatment the trial judge showed to the Attorneys and the Williams McDaniel firm in reaching those decisions.

The majority succinctly sets out the procedural history, and I will not reiterate it here. However, looking closely at the timing of events, I opine that the trial court's bias against the Attorneys began, in earnest, after it entered the April 26, 2023 order requiring Attorneys to retain Ms. Thompson and Ms. Gattas to represent Ms. Malone. The bias is first evident at the May 4, 2023 "status" conference, which was held a mere eight days after the court issued the April 26 order. As the majority notes, Mr. McDaniel appeared in place of Mr. Autry at that hearing, Mr. McDaniel advised Judge Townsend that Attorneys "[h]ad no opportunity to address the Court. We have no opportunity to present evidence. This is simply—the Court is, in essence, destroying a contractual relationship and a personal relationship that's existed between our firm and our client." Rather than acknowledging that there had, in fact, been no evidentiary hearing, the trial court reiterated its April 26, 2023 order directing the Attorneys to retain Ms. Gattas and Ms. Thomson. Although the April 26 order had been entered just over a week before, the trial court stated that it would

"be entering an order directing that on June the 1st at eleven o'clock, 2023, Ed Autry and Hannah Bleavins are to personally appear before this Court to show cause if and why they are not to be held in contempt of court for failing to obey the Court's order of April 26th to retain Ms. Gattas and Ms. Thompson." The trial court's statement was made in the absence of any evidence that the Attorneys planned to ignore the April 26 order. Nonetheless, in its May 4, 2023 "Order on May 4 Status Conference" the trial court held (without evidence):

> The Court removes the authority of Edward T. Autry and/or Hannah E. Bleavins as Attorneys-in-Fact for Susan Davis Malone in the pending appeal concerning In Re Conservatorship of Susan Davis Malone, Docket No. PR-24346 both because Susan Davis Malone needs a neutral person to make decisions in that matter on her behalf and also because Edward T. Autry and/or Hannah E. Bleavins as Attorneys-in-Fact failed to comply with this Court's oral Order on April 11, 2023 and this Court's written Order of April 26, 2023, that directed Edward T. Autry and Hannah E. Bleavins, as Attorneys-in-Fact for Susan Davis Malone, to engage Lynn Thompson.

In a May 12, 2023 "addendum" to its May 4 order, the trial court further held:

> Because Ms. Bleavins is married to Attorney Edward Autry, the Estate Planning Documents also create a financial benefit for him. The Court finds that the long-term fiduciary appointment Ms. Bleavins established for herself in Ms. Malone's Estate Planning Document creates the appearance of a conflict between Mr. Autry/Ms. Bleavins' own financial interests and their obligations to Ms. Malone in Malone v. Malone.

Again, the foregoing decisions were made without an evidentiary hearing and just eight days after the trial court entered the April 26 order. Furthermore, the "estate planning document" the trial court references is, in fact, Ms. Malone's Last Will and Testament. At the May 4, 2023 "status" conference, Ms. Bleavins objected to the trial court's considering Ms. Malone's will, to-wit:

> MS. BLEAVINS: Your Honor, I represent Susan as her attorney. I helped prepare her statement and documents, and I believe that they are covered by attorney-client privilege that has not been waived. And I would respectfully prefer not to speak about her documents.
> THE COURT: At this point, the Court has ordered that that document be turned over to the guardian ad litem. So that privilege has been waived because by court order, the Court has basically made it part of the record by giving it to the guardian ad litem. So again, I'd ask you, is it your belief that the last will and testament that you drafted nominates you to be the trustee of a trust for Ms.—assuming that it's admitted to probate—in the future for the

- 2 -

grandchildren?

Ms. Malone is not deceased, and so the contents of her will should not have been before the trial court much less used as the basis for removing Ms. Bleavins and Mr. Autry from their long-term attorney-client relationship with Ms. Malone. Ms. Malone's un-probated will created no conflict because it was inchoate at the time the trial court relied on its contents, and I opine that Judge Townsend used the will to justify his resolve to remove Attorneys, and their firm, from any and all representation of Ms. Malone and to punish them for questioning his decisions leading up to that ultimate goal.

Two days before the court entered its "addendum," on May 10, 2023, Attorneys filed Rule 10 applications for extraordinary appeal in both the conservatorship and post-divorce actions. The Rule 10 petitions raise issues concerning whether Judge Townsend had the authority to: (1) remove Mr. Autry and Ms. Blevins as Ms. Malone's attorneys-in-fact and her attorney's in the post-divorce matter; (2) require Mr. Autry and Ms. Blevins to retain attorney Lynn Thompson to represent Ms. Malone; (3) require Mr. Autry and Ms. Blevins to retain attorney Leslie Gattas to represent Ms. Malone in the post-divorce matter; (4) hold Mr. Autry and Ms. Blevins in contempt for failure to immediately retain Ms. Thomas and Ms. Gattas; (5) do all of the foregoing without the benefit of evidentiary hearing and without making findings of fact. The Rule 10 applications also asserted that Judge Townsend should be "disqualified from presiding over the cases below based on his pattern and practice of issuing multiple orders without making any substantive factual findings and without holding any evidentiary hearing." The majority does not address the filing of the Rule 10 appeals and limits its review to the Rule 10B applications. However, I am of the opinion that the Rule 10 filings fueled the trial court's bias against Attorneys and their firm. As such, I exercise my discretion to consider the trial court's actions in the context of the pending Rule 10 applications.

There is no dispute that, on May 16, 2023, Attorneys were properly served with the summonses for the show cause hearing. However, at a status conference on May 17, 2023, with opposing counsel present, Judge Townsend caused Mr. Autry to be served with process. In his order denying recusal, Judge Townsend explained that the "[s]ervice of the summons in the presence of other counsel who already had notice of that contempt hearing is in no way any evidence of any bias on the part of this Court. It was simply a ministerial, procedural step the Court took to be sure of clear notice to [Attorneys] of the contempt hearing required by their failure to comply with this Court's order of April 26, 2023." The trial court's explanation is disingenuous in view of the timing of this public summonsing. The Rule 10 appeals had been filed one week earlier, and these appeals questioned the very order that the trial court threatened as its basis for contempt proceedings against Attorneys. Furthermore, there was no evidence that the Attorneys were unaware of the April 26 order, and, in fact, it is undisputed that they were served with same on May 16. The public service on Mr. Autry on May 17 was completely unnecessary under the circumstances and had no reasonable legal basis. As such, it was an extrajudicial act that was done as a show of

- 3 -

authority on the part of Judge Townsend, and it signaled his disdain for and bias against Attorneys. However, this was not Judge Townsends only extrajudicial act.

As the majority notes, on the same day that the summonses were issued, *i.e.*, May 16, 2023, "the trial judge contacted Holly Brewer Palmer, an associate with Williams McDaniel, via the telephone to inform her that the law firm of Evans Petree, PC, was seeking to hire an associate attorney to work on probate matters." Judge Townsend has no personal relationship with Ms. Palmer, but took it upon himself to advise her of an opportunity with one of the opposing firms. The majority opines that "[t]he telephone call to the attorney did not involve either the conservatorship case or the post-divorce matter, and there is no evidence that disparaging comments were made regarding Williams McDaniel. We therefore determine that the telephone call between the trial judge and the associate attorney at Williams McDaniel did not rise to the level of demonstrating bias by the trial judge requiring his recusal." With respect to my colleagues, the very subject of the call was "disparaging" to Williams McDaniel. The sole purpose of Judge Townsend's call was to inform Ms. Palmer that the Evans Petree firm was superior to the Williams McDaniel firm. Furthermore, I cannot overlook the timing of the call on the same day as the trial judge caused unnecessary summonses to issue for Attorneys—and all of this after Attorneys sought extraordinary appeal to this Court.

Even after the Rule 10 appeals and the Rule 10B appeals were filed in this Court, Judge Townsend ignored our clear orders and continued his pattern of bias against Attorneys and their firm. On June 14, 2023, this Court entered orders granting Attorneys' motions for stays in both the conservatorship and post-divorce Rule 10B appeals. In relevant part, we ordered that

> all trial court proceedings shall be stayed pending further Order of this Court. This stay includes but is not limited to: (1) the taking of the depositions of Attorneys Autry and Bleavins; (2) the production of documents for such depositions; (3) the appointment of an interim conservator over the person and Estate of Ms. Malone; and (4) the turning over of Ms. Malone's funds by Attorneys Autry and Bleavins to an interim conservator.

On June 23, 2023, this Court entered orders in the Rule 10 appeals, staying those proceedings pending the outcome of the Rule 10B appeals. On July 25, 2023, Attorneys filed a motion in this Court asking us to clarify our June 14, 2023 orders granting the stays. Therein, Attorneys averred, *inter alia*:

> Judge Townsend has further construed this Court's June 14, 2023 Order to prohibit Judge Townsend from entering any dispositive order in any matter pending in Division 2 of the Probate Court of Shelby County, Tennessee involving Attorney Autry, Attorney Bleavins and any attorney employed with Williams McDaniel, PLLC. . . . Moreover, Judge Townsend has

- 4 -

specifically prohibited Judge Kathleen N. Gomes (Judge of Division 1 of the Probate Court of Shelby County, Tennessee) from hearing any matter or entering any dispositive order (by interchange) for any and all matters assigned to Judge Townsend and involving Attorney Autry, Attorney Bleavins and any attorney employed with Williams McDaniel, PLLC.

This Court granted Attorneys' motion for clarification and entered an order on August 8, 2023, wherein we held, in relevant part that,

> [a]lthough this Court's June 14, 2023 order was clear, upon due consideration, the motion is GRANTED to the extent needed to reiterate that the trial judge is permitted to hear and enter dispositive orders in other matters pending before him that involve Attorneys Autry and Bleavins and that involve attorneys practicing with the law firm of Williams McDaniel, PLLC. The stay entered in this case prohibits the trial judge from entering dispositive orders only in this matter and the companion case, *In re Conservatorship of Susan Davis Malone*, No. PR-24906.

As we explained, this Court's June 14, 2023 orders were clear. Any reasonable person, much less a judge, could only interpret the stay orders to apply to the cases associated with the case numbers on the actual orders. Furthermore, as set out above, the orders enumerate specific prohibited actions, *i.e.*, "the appointment of an interim conservator over the person and Estate of Ms. Malone; and [] the turning over of Ms. Malone's funds by Attorneys Autry and Bleavins to an interim conservator"—these actions could only be associated with the Malone cases. So, taking Attorneys' averments as true, Judge Townsend's weaponizing of our June 14, 2023 order to pretextually prevent him from hearing any matters from the Williams McDaniel firm, and his bold attempt to prohibit another judge from hearing these matters by interchange, can only be interpreted as acts of harassment and bias against Attorneys and their firm. Judge Townsend's gamesmanship no doubt worked a disservice to the litigants involved in those cases by causing unnecessary delay and likely caused additional work and explanation on the part of the Williams McDaniel attorneys, who were assigned to those delayed cases. No unbiased judge would engage in such antics.

Turning back to the record, on October 10, 2023, we entered orders in the Rule 10 appeals, lifting the stays in those appeals and remanding "to the trial court for the limited purpose of adjudicating Appellants' May 2, 2023 motion to alter or amend." On November 7, 2023, in the Rule 10 conservatorship appeal, Attorneys filed a motion to reinstate the stay. As grounds, Attorneys averred that despite this Court's orders, "[o]n October 31, 2023 . . . [Judge Townsend] entered an Order Partially Granting Five (5) Motions to Alter or Amend, Setting Aside the Findings of Facts and the Rulings in the Orders, and Setting Matters for Evidentiary Hearing. . . ." Indeed, at paragraph 7 of the trial court's October 31, 2023 order, Judge Townsend scheduled a "status conference on November 6, 2023 at

- 5 -

2:30pm for the purpose of scheduling the evidentiary hearings to carry out the terms of the October 31, 2023 Trial Court Order." Despite the fact that this Court's June 14, 2023 order staying all of the trial court's proceedings (except adjudication of the May 2 motion to alter or amend) remained in effect, Judge Townsend proceeded with the November 6 "status conference." The transcript of those proceedings clearly evidences Judge Townsend's disdain for Mr. Autry and his continued pattern of bias toward the Williams McDaniel firm, to-wit:

> THE COURT: So I'm looking for some feedback from the attorney for the parties—the attorneys so who would like to go first as far as setting these matters? In other words—let me do this since there seems to be some confusion. Mr. Autry, let me ask you first, how much time do you need for the hearing?
>
> MR. AUTRY: With all due respect and candor to the Court, Your Honor, I don't believe the Court is authorized to move forward with an evidentiary hearing based on the mandate from the Court of Appeals.
>
> THE COURT: All right.
>
> MR. AUTRY: But whatever [date] the Court sets, I will comply with.
>
> THE COURT: Let me ask you a second question, Mr. Autry. Who is your client?
>
> MR. AUTRY: Who is my client?
>
> THE COURT: In this case.
>
> MR. AUTRY: Well, I am—I'm the petitioner, Ms. Bleavins is the petitioner in all the matters that I'm aware of.
>
> THE COURT: So you're your own client and your wife is your own client?
>
> MR. AUTRY: I think the pleadings speak for themselves so I represent my wife, I represent myself, my other partner that you have summoned to court before, our entire firm represents us in the matters before the Court.
>
> THE COURT: Okay. Do you or your wife plan on testifying in this case?
>
> MR. AUTRY: I don't know at this point, Your Honor.
>
> THE COURT: Do you see that you might need to testify since we are moving to evidentiary hearings? You asked me to set aside everything in your motions to alter or amend because there was no evidentiary hearings. So now we are proceeding to evidentiary hearings.
>
> MR. AUTRY: I don't know as we sit here today, Your Honor. I haven't reached that point in the decision-making process.
>
> THE COURT: Okay. And so what you're saying is you're available whenever the Court sets the evidentiary hearings, although you don't think the Court has mandate to hear; is that correct?
>
> MR. AUTRY: What I'm also saying, Your Honor, is with all due respect when the Court set this matter for hearing today, I informed your clerk that I was unavailable. When I didn't receive a response, I had to have my partners cover current client appointments that were set weeks ago, and that's the

- 6 -

reason Ms. Bleavins is not here today. She is covering a client appointment that we could not reschedule today. I will be available for the Court—when the Court issues an order.

THE COURT: Let me just say this: Your communication with my clerk is not proper in an adversary case. I set this matter for a hearing. If you wanted to continue it, you would need to file a motion.

MR. AUTRY: Is that also—okay.

THE COURT: Okay.

MR. AUTRY: Understood, Your Honor.

Then, Judge Townsend proceeded to set the evidentiary hearing to begin immediately, to-wit:

It's 2:45. The Court will set the evidentiary hearing on this matter for 2:47 today. The Court will take a standing recess. After the standing recess, the Court will begin the evidentiary hearing in this case to deal with the motions to alter or amend on an evidentiary basis.

Then, without taking any evidence, Judge Townsend, after setting the evidentiary hearing with two-minutes' notice to the litigants, flagrantly overstepped this Court's orders and proceeded *sua sponte* to disqualify the entire Williams McDaniel firm in what I can only describe as a spiral of bias and unadulterated disdain for Attorneys and their firm. Judge Townsend stated:

Now, first thing that the Court has to do because the Court is going to sua sponte raise whether the attorneys of record from the Williams McDaniel's law firm can proceed because of Rule 3.7 by bringing lawyers as a witness. A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness. There are certain exceptions to that rule. If the testimony relates to an uncontested issue is the first exception. Well, this issue before this Court has been highly contested for almost a year. If the testimony—another exception is if the testimony relates to the nature and value of legal services rendered in the case. Well, that deals with basically attorneys testifying for their fees. That does not apply here. The final one is—exception is disqualification of a lawyer would work a substantial hardship on the client. I asked Mr. Autry earlier in the status hearing who is your client? In the evidentiary hearing the Court will ask this again. Mr. Autry, who is your client in this case?

MR. AUTRY: Your Honor, with all due respect to the Court, it is wholly improper for the Court to move forward with an evidentiary hearing with two-minutes' notice to all parties that is contrary to the order issued by the Court of Appeals which specifically said this matter is remanded to the trial court for the limited purpose of adjudicating appellant's May 2, 2023, motion

- 7 -

to alter or amend and is so ordered. That is the only thing the Court is allowed to do. I will answer the Court's question and in light of the Court's sua sponte bringing the ethical issue with respect to whether I'm able to represent myself and Ms. Bleavins because we perhaps might be a witness, I'm asking the Court to adjourn so that the attorneys can call the bar and seek an opinion before we move forward because of course the Court doesn't want us to violate any ethical rules. So I'm asking the Court to adjourn this wholly improper—it's public bias against myself and my firm, and I stand on the same answer I provided the Court before.

THE COURT: All right. Your objection is duly noted, counsel. And the Court will note that it is preferable governing this rule that either the attorney who is likely to testify raises the issue as early as possible or opposing counsel raises it. However, there is case law to support the fact that a judge should raise the issue sua sponte if appropriate. That case is MacArthur versus Bank of New York, 524 Fed Supp. 1205, 1981. The Court finds that this is a petition to determine the conservatorship of the respondent Susan Davis Malone. The—Mr. Autry and Ms. Bleavins filed that petition alleging that they were the attorney in facts for Susan Davis Malone. The Court finds that their client is Susan Davis Malone in this matter. Susan Davis Malone appears to have a disability and is—it appears to be in the—of the protection of this Court. In weighing whether or not attorneys should be removed because they're likely to be a witness, one of the factors the Court should consider is that a party cannot choose in between an attorney's testimony and his representation. There are many attorneys in the bar. There are only a few people who can testify as to the facts. In this case there are allegations in the pleadings, which by the way, the Court attempted to decide this matter as much as possible on the pleadings. The Court is only at this point because of the motions to alter or amend wherein it was complained that the Court did not hold evidentiary hearings. Now, I'm not aware of how anybody can petition a court in a conservatorship action without testifying, especially if the petitioner is alleging that they are the proper attorney in facts. Also I cannot—it is important for the Court to determine there are allegations in the pleadings that Ms. Bleavins formed a close relationship with Susan Davis Malone. So close that there's allegations in the pleadings that she was called her daughter; Ms. Bleavins was called the daughter. That means there's allegations in the pleadings that Ms. Bleavins may be a de facto daughter of Susan Davis Malone. I have the other petitioner, Ms. Jackson who is the daughter of Susan Davis Malone. This raises issues of whether or not one daughter exercised undue influence over the respondent in her favor, as opposed to the other daughter. There's allegations as to whether Ms. Jackson may have exercised undue influence, but there's also allegations as to whether Ms. Bleavins as the de facto daughter, if she is one, exercised undue influence. Now, another factor in whether or not to remove attorneys under

- 8 -

this rule is whether or not it would work an undue hardship on the client. In this case the client is Susan Davis Malone. This Court is charged with determining what is in her best interests. This Court wants to hear the testimony of Mr. Autry and Ms. Bleavins, especially Ms. Bleavins. Now, in this rule it also says under B a lawyer may—a lawyer may as an advocate in a trial in which another lawyer and the lawyer's firm is likely to be called as a witness, unless precluded from doing so. Well, we have one lawyer who is married to another lawyer and then we have another lawyer, Mr. Snyder, who works closely in a small firm with the two other lawyers. The Court cannot find anyway in which this law firm can represent Susan Davis Malone in this petition because it violates Rule 3.7. The Court notes in the first comment to this rule combining the roles of advocate and witness can prejudice the tribunal and opposing parties and can also involve conflict of interest between the lawyer and the client. Now, the petitioners could have elected to remedy this problem. They could have retained outside counsel to represent them. They have not. So the Court finds that it is proper for them not to serve in this case as the attorney for Susan Davis Malone. Other notes include such—such things as conversely opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. Well, this is difficult for the tribunal also. So the Court finds that Mr. Autry, Ms. Bleavins, and Mr. Snyder are disqualified from serving as the attorneys in advocating for Susan Davis Malone in this matter.

Judge Townsend then literally removed Mr. Autry from the bar, stating, "Mr. Autry, I will have you step back from the counsel area and move to the gallery so the Court can proceed with the evidentiary hearing." Mr. Autry protested:

MR. AUTRY: Your Honor, again I'm going to object because there's no evidence to suggest that Ms. Malone was afforded the opportunity if there was an evidentiary hearing taking place today. Again it is totally improper to schedule an evidentiary hearing two minutes after the Court announced it, and specifically since the Court speaks through its order in paragraph number 7 of this Court's order entered on October 31, 2023 [it] says, the Court sets a status conference, emphasis on status conference, for today at 2:30 p.m. for the purpose of scheduling the evidentiary hearing to carry out the terms of this order. So, if I'm not allowed to advocate and the Court wishes to pursue and continue the evidentiary hearing, I would like to be excused because I'm going to take the appropriate action to correct what I believe is a grievous error and obvious bias against our firm.

Again, all of the foregoing occurred in the absence of any evidence to support the trial court's actions. Furthermore, Rule 10B appeals were pending in this Court, and so the question of whether Judge Townsend would continue to preside over the cases was not

determined, and any conflicts with Attorneys' testimony was speculative. What is clear, however, is that Judge Townsend, for lack of a better phrase, lay in wait for Mr. Autry and proceeded to ambush him in the public forum of his courtroom. Clearly, Judge Townsend had prepared for his sua sponte motion, reviewing Rule 3.7 and even finding caselaw to bolster his plan to remove McDaniel Williams from the cases. The only motive I can reasonably infer is bias toward the Attorneys and the firm based on the fact that they dared to question Judge Townsend's decisions (which were made without evidence) and appeal those rulings to this Court.

True to Mr. Autry's statement that "I'm going to take the appropriate action to correct what I believe is a grievous error and obvious bias against our firm," on November 20, 2023, Attorneys filed petitions for writs of mandamus and to vacate the trial court's orders entered after October 31, 2023. On November 30, 2023, this Court entered orders granting Attorneys' petitions in part. Specifically, we held that

> [t]he trial court's November 7, 2023 and November 15, 2023 orders detail the findings and holding of the evidentiary hearing the trial court held to re-adjudicate the motion to alter or amend. Holding an evidentiary hearing was outside of the scope of the trial court's authority set forth in the Remand Order. The trial court did not have authority to make these findings and holdings, which renders them void and of no consequence to this Court. [citation omitted]. As such, the appellants' request that certain orders be declared void is GRANTED. The portion of the October 31, 2023 order referencing the evidentiary hearing is therefore vacated. Additionally, the trial court's November 14, 2023 order reflecting a status hearing in which the matter was scheduled for an evidentiary hearing; its November 7, 2023 order appointing new conservators for Ms. Malone's person and estate; and the November 15, 2023 order regarding the evidentiary hearing also are vacated because the trial court had no jurisdiction to enter these orders.

The last exchange between Judge Townsend and Mr. Autry at the November 6, 2023 hearing is perhaps the best example of the bias that has pervaded these proceedings.

> THE COURT [to Mr. Autry]: Counsel, let me have you step back first so that you will know that you are no longer advocating, and then the Court is going to address you one more time.
> MR. AUTRY: Again with all due respect, Your Honor, I'm a member of the bar, I'm entitled to step before the bar, but I will comply with the Court's order just like I complied with the Court's order for being here today at 2:30 p.m. when the Court knew I had a conflict.
> THE COURT: Okay. Now, the Court is going to proceed with this hearing for many reasons that involved the substantial interests of Susan Davis Malone. Mr. Autry is no longer an attorney in this case because he's been

- 10 -

disqualified, and he will not advocate anymore in this case before this Court. Mr. Autry as a witness, if you want to leave, you can leave. You waive being here on your own accord. If you want to stay, you may stay, but you will not address the Court.

MR. AUTRY: For a point of clarification, Your Honor, for the record purposes I presume we are not here on the emergency matter to which the Court referenced before because the Court does not have jurisdiction over that matter, and with respect to my response to the Court, I responded when the Court asked me who I represented and I responded that I represented myself and Ms. Bleavins. The Court just disqualified myself and Ms. Bleavins and my entire firm from representing Susan Davis Malone. So is that—I just want to understand if I'm correct in that assessment.

THE COURT: Let me just make one thing clear. There is a decorum in the court. The Court does not answer questions, okay, and I appreciate the fact that counsels do not ask me questions. The Court especially does not answer questions of witnesses. Deputy, if you need to—

MR. AUTRY: Your Honor, I just asked for a point of clarification. Obviously, the Court does not wish to clarify its ruling. I will depart since I am, by the Court's order, only a witness at this point. Thank you for your time and attention, Your Honor.

As Judge Townsend made clear, "[t]here is a decorum in the court." Here, however, there has been none shown by the court itself. The trial court has shown disdain for and bias against Attorneys and their firm at every turn. Considered objectively and knowing all the facts and circumstances here, a person of ordinary prudence would find a reasonable basis for questioning the judge's impartiality in this case. Nonetheless, despite ample proof to the contrary, the majority has opined that Judge Townsend has no bias toward Attorneys or their firm, and that he may preside over the conservatorship and post-divorce matters. This is plain error. Judge Townsend is clearly biased against the Williams McDaniel firm, and with his denial of recusal now affirmed, he will be unchecked and emboldened in his dogged pursuit of removal of Attorneys from these cases and the usurpation of Ms. Malone's estate planning and wishes. I dissent.

___s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE

- 11 -